[Cite as *Hansen v. Tuscarawas Cty.*, 2019-Ohio-4494.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| MARSHALL HANSEN | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Earle E. Wise, J. |
| -vs- | : | | |
| | : | | |
| COUNTY OF TUSCARAWAS, OHIO | : | | Case No. 2019 AP 01 0003 |
| | : | | |
| Defendant - Appellee | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the New Philadelphia
Municipal Court, Case No. CVH
1800715

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     October 31, 2019

APPEARANCES:

For Plaintiff-Appellant     For Defendant-Appellee

MICHELA HUTH     ROBERT R. STEPHENSON II
PO Box 17     Assistant Tuscarawas County Prosecutor
Bolivar, Ohio 44612     125 East High Avenue
New Philadelphia, Ohio 44663

*Baldwin, J.*

{¶1}   Marshall Hansen appeals the decision of the New Philadelphia Municipal Court finding that his dog was a dangerous dog as defined in R.C. 955.11(A)(1)(a)(i). Appellee is the County of Tuscarawas.

## STATEMENT OF FACTS AND THE CASE

{¶2}   Appellant's dog, Zeus, bit three family members after an argument came to a head.  The dog had been restrained in the basement of the home but was released. During the family argument, Appellant's brother allegedly acted in a way that Appellant suggested that Zeus perceived as an attack.  Appellant struggled with the dog to force him to release his brother and the dog attacked him.  Appellant's mother grabbed Zeus's collar to pull from Appellant and the dog bit her.

{¶3}   The Tuscarawas County Dog Warden ('the Warden") was called to the scene by the local police department and discussed the facts with Appellant.  He explained that Zeus must be quarantined and Appellant could keep him in the home or he could be quarantined at the animal shelter.  Appellant signed a release to have Zeus confined at the animal shelter and originally intended to surrender the animal to the county, who would have probably euthanized him as being unadoptable.  Appellant reconsidered and now keeps Zeus in the basement away from other family members.

{¶4}   The Warden designated Zeus a dangerous dog pursuant to R.C. 955.11(A)(1)(a)(i) and Appellant requested a hearing on this designation pursuant to R.C. 955.222(C). The trial court held an evidentiary hearing regarding the dangerous dog designation and found that the Warden had proven the facts by clear and convincing

evidence and that Zeus was properly found to be a dangerous dog. Appellant filed a timely appeal and submitted one assignment of error:

**{¶5}** "I. THE TRIAL COURT ERRED IN DESIGNATING ZEUS AS DANGEROUS, BECAUSE THE EVIDENCE SHOWS ZEUS WAS PROVOKED, AND THEREFORE THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO WELL-ESTABLISHED LAW."

### STANDARD OF REVIEW

**{¶6}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541 Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id.

**{¶7}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶8}** To the extent that the Appellant's assignment of error requires us to interpret R.C. 955.11 or any applicable law, our standard of review is de novo and our goal is to

ascertain and give effect to the legislature's intent, as expressed in the plain meaning of the statutory language. (Citations omitted.) *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478.

## ANALYSIS

**{¶9}** The Warden's designation of Zeus as a dangerous dog is subject to challenge by Appellant upon request for a hearing. R.C. 955.222(C). The Warden has the burden of proof at this hearing to establish, by clear and convincing evidence, that Zeus is a dangerous dog. For purposes of this case, a "[d]angerous dog" means a dog that, without provocation, and subject to division (A)(1)(b) of this section, has *** [c]aused injury, other than killing or serious injury, to any person ***." R.C. 955.11(A)(1)(a)(i). "'Without provocation' means that a dog was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(7).

**{¶10}** The focal point of this case is whether the interaction between the victims and Zeus can be characterized as provocation as that term is defined in R.C. 955.11(A)(7). The Warden had the burden of proof to establish by clear and convincing evidence that Zeus caused one or all of the injuries without provocation. Because the remaining elements of the charge were not disputed, our analysis is limited to review of the facts to determine whether the trial court's conclusion that there was clear and convincing evidence the dog attacked without provocation was against the manifest weight of the evidence.

{¶11} The terms "teasing," "tormenting," and "abusing" were defined for purposes of R.C. 955.28(B), Ohio's dog-bite statute, and are set forth in 1 *Ohio Jury Instructions* 409.03, Section 5. "Teasing" means "to annoy or to trouble or worry persistently, to be troublesome or to pester." "Tormenting" is "conduct which provokes a greater annoyance and implies some torture or pain," and "[a]busing" is "mistreatment which includes some physical injury or pain to the animal. We find that those definitions are likewise applicable in this case, though we are addressing the application of R.C. 955.11 and not R.C. 955.28.

{¶12} The Warden concluded that the evidence did not show that the dog had been teased, tormented or abused based upon his interview of Appellant. Appellant did not contend that Zeus had been teased, tormented or abused, but suggested that the three day old altercation in the home and his brother's action, raising his arms as if to strike Appellant, triggered the dog's reaction. The trial court did not rely on this incident in its holding, presumably because it found the attack on the brother was provoked by him and that the dog was "coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity."

{¶13} Appellant punched the dog in the head to force it to release its grip of his brother and it is reasonable to conclude that Appellant's actions may have produced some pain. We find that the trial court adhered to the holding in *Pflaum v. Summit Cty. Animal Control*, 9th Dist. No. 28335, 2017-Ohio-4166, 92 N.E.3d 132, ¶ 17 where that court concluded that "It is axiomatic that striking a dog and aggressively pulling on its collar would, at a minimum, constitute tormenting." In *Pflaum* the court held that the victim provoked the dog by pulling on its collar and punching it in an attempt to rescue a smaller

dog that had been attacked.  In this case, Appellant grabbed the dog's head and punched him to force him to release his brother and the dog turned on Appellant and bit him. We find the evidence supported the trial court's disregard of that attack as provoked and thus exempt from the definition of a dangerous dog.

{¶14}  Zeus next attacked the Appellant's mother as she attempted to pull the dog away from Appellant.  The attack on Appellant's mother is materially different than the attack in *Pflaum* and that precedent is inapplicable to the facts before this court.  When the dog bit Appellant, his mother pulled on the dog's collar to get him away from Appellant and the animal turned and bit her.  The appellant's mother did not strike or punch the dog, but only pulled on its collar, distinguishing this case from the *Pflaum* case. Collars are typically used to control dogs and there is no evidence in the record that Appellant's mother used the collar to harm the dog in any way or took any other action that could be characterized as teasing, tormenting or abusing the dog.  The trial court concluded that the attack on the Appellant's mother was not provoked and that the evidence regarding that attack provided clear and convincing evidence that Zeus was a dangerous dog.

**{¶15}** We hold that the trial court's holding that " the respondent has proven, by clear and convincing evidence, that Zeus attacked the petitioner's mother without legally sufficient provocation" and that Zeus is a dangerous dog is not against the manifest weight of the evidence and is not in violation of established law.  Appellant's assignment of error is overruled and the decision of the New Philadelphia Municipal Court is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, Earle, J. concur.